No. 24-10736

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

---

NATIONAL SMALL BUSINESS UNITED, *ET AL.*,

*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF THE TREASURY, *ET AL.*,

*Defendants-Appellants.*

---

On Appeal from the U.S. District Court for the Northern
District of Alabama (5:22-cv-1448-LCB)

---

## BRIEF OF SENATORS SHELDON WHITEHOUSE, RON WYDEN, ELIZABETH WARREN, JACK REED, AND REPRESENTATIVE MAXINE WATERS AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS

---

Robin F. Thurston
Heeyoung (Linda) Park
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
rthurston@democracyforward.org
lhpark@democracyforward.org

*Counsel for* Amici Curiae

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENTS

Pursuant to 11th Cir. R. 26.1-1, counsel for Amici certify that the following have an interest in the outcome of this appeal:

Reed, Senator Jack

Warren, Senator Elizabeth

Waters, Representative Maxine

Whitehouse, Senator Sheldon

Wyden, Senator Ron

*/s/ Robin F. Thurston*
Robin F. Thurston
*Counsel for* Amici Curiae

## TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENTS ..........................................................................I

TABLE OF AUTHORITIES..........................................................................III

INTERESTS OF AMICI CURIAE ................................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT........................... 1

ARGUMENT.............................................................................................. 2

   I.  Congress Has Robust Article I Authorities. ............................... 2

   II. The Corporate Transparency Act Is a Legitimate Exercise of Congress's
Authorities. ........................................................................... 4

      A. National Security and Foreign Affairs.................................... 7

      B. Interstate and Foreign Commerce ....................................... 11

      C. Tax ............................................................................... 14

CONCLUSION........................................................................................ 15

CERTIFICATE OF COMPLIANCE ............................................................ 16

CERTIFICATE OF SERVICE ................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*907 Whitehead St. Inc. v. Gipson*, 701 F.3d 1345 (11th Cir. 2012) ........................13

*Gonzales v. Raich*, 545 U.S. 1 (2005) ...............................................................3, 13

*Hernandez v. Mesa*, 589 U.S. 93 (2020) .................................................................2

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981) .........14

*Holder v. Hum. L. Project*, 561 U.S. 1 (2010).......................................................3, 4

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ...................................2

*Nat'l Small Bus. United v. Yellen*, 2024 WL 899372 (N.D. Ala. Mar. 1, 2024) ........6

*Perez v. United States*, 402 U.S. 146 (1971) .........................................................13

*Turner Broad. Sys. v. FCC*, 520 U.S. 180 (1997)...................................................3, 4

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ...................................13

*United States v. Bond,* 572 U.S. 844 (2014)...........................................................10

*United States v. Comstock*, 560 U.S. 126 (2010) .....................................................3

*United States v. Salerno*, 481 U.S. 739 (1987).......................................................10

*United States v. Viscome*, 144 F.3d 1365 (11th Cir. 1998) .......................................3

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) .......................7

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)....................................................................2

**STATUTES**

Nat'l Defense Auth. Act for FY 2021, Pub. L. 116-283, 134 Stat. 3388 (2021)..7, 8, 12, 14

**OTHER AUTHORITIES**

166 Cong. Rec. (daily ed. Dec. 9, 2020) ..........................................4, 5, 9, 10, 11, 12

*Opaque Shell Companies: A Risk to Nat'l Security, Public Health, and Rule of Law: Hrg., S. Caucus on Int'l Narcotics Control*, 118th Cong. (2024) .............10

*Combating Illicit Financing By Anonymous Shell Companies Through The Collection Of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019) ............................................................4

*Combating Kleptocracy with Incorporation Transparency: Hrg., Comm. on Sec. & Coop. in Eur.*, 115th Cong. (2017) ....................................................5

*Combating Kleptocracy: Hrg., S. Comm. on the Judiciary*, 116th Cong. (2019) ........................................................................6, 8, 9, 11, 15

*Corruption, Violent Extremism, Kleptocracy, and the Dangers of Failing Governance: Hrg., S. Comm. on Foreign Rels.,* 114th Cong. (2016) .................4

Dep't of Treasury, *2024 National Proliferation Financing Risk Assessment* (2024) ..........................................................................................8

H.R. Rep. No. 116-227 (2019) .....................................................4, 5, 6, 11

*Human Trafficking and its Intersection: Hrg., Subcomm. on Nat'l Sec. & Int'l Trade & Fin. of the S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019) ..........................................................................................6

*Keeping Foreign Corruption Out of the United States: Four Case Histories: Hrg., Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.*, 111th Cong. (2010).............................................................4

Letter from Bipartisan Grp. of 91 Nat'l Sec. Experts to Comm. on Fin. Servs. (June 10, 2019), https://shorturl.at/akEGH ...........................................5

Letter from Chamber of Com. to U.S. Senate (June 30, 2020), https://shorturl.at/astIN.....................................................................5

Main Street All., *Anti-Money Laundering Act of 202*0 (June 26, 2020), https://shorturl.at/kwyBZ ....................................................................5

Nat'l Foreign Trade Council et al., *Illicit Cash Act (S. 2563)* (June 17, 2020), https://shorturl.at/nDKQ0.....................................................................5

Off. of Mgmt. & Budget, *Statement of Administrative Policy* (Oct. 22, 2019).......10

*Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019) .......4, 6, 8

*President's FY 2019 Budget: Hrg., S. Comm. on Fin.*, 115th Cong. (2018) ......................................................................................4, 12, 14

*Promoting Corp. Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, 116th Cong. (2019) ...........................................................................6, 9, 11, 12

iv

Small Bus. Majority, *Anti-Money Laundering Act of 2020* (June 29, 2020), https://shorturl.at/ehnGI ......................................................................................5

*Staff Report: The Art Industry and U.S. Policies That Undermine Sanctions, Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.*, 116th Cong. (2020) .....................................................................................9

*The Annual Testimony: Hrg., H. Comm. on Fin. Servs.*, 115th Cong. (2017).....5, 11

*Tools of Transnational Repression: Hrg., Comm. on Sec. & Coop. in Eur.*, 116th Cong. (2019) ..............................................................................................6

U.S. Dep't of Treasury, *Remarks by Secretary of Treasury Janet L. Yellen at the Summit for Democracy* (2021) .............................................................................9

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, cl. 1 .................................................................................2, 14

## INTERESTS OF AMICI CURIAE[1]

Amici are members of the U.S. Senate and the House of Representatives. Amici include sponsors of the law in this case, the Corporate Transparency Act, and its predecessor legislation, who can speak authoritatively on the Act's legislative history and intent. More generally, as legislators, Amici have deep experience formulating federal policy to combat money laundering and corruption and regulating the financial industry, issues that span state and international boundaries.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Anonymous shell corporations harm the United States' national security, foreign affairs, foreign and interstate commerce, and tax interests. Such shell companies often operate in multiple layers to hide their true owners and violations of key sanctions, money-laundering, and tax laws. Allowing illicit money to be hidden through corporate forms also undermines public safety and law enforcement efficacy on a national and international scale.

Responding to these dangers, Congress passed the Corporate Transparency Act ("CTA"), after it determined that requiring disclosure of beneficial ownership of legal

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund this brief, and no person other than amici curiae, their members, and their counsel contributed money to fund this brief. All parties have consented to the filing of this brief.

entities, including shell companies, is crucial to combat money laundering and its attendant national security and law enforcement risks. The CTA is a garden-variety, valid exercise of Congress's core Article I authorities, supported by extensive congressional factfinding and a robust legislative record. The district court's contrary holding rests on a cramped reading of Congress's Article I authority, contravenes decades of precedent, and without record support impermissibly second-guesses Congress's copious factual findings.

## ARGUMENT

### I.    Congress Has Robust Article I Authorities.

The CTA represents a routine exercise of core authorities enumerated in Article I of the Constitution. "National-security policy is the prerogative of the Congress and President." *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017) (citing U.S. Const. art. I, § 8). So too is the regulation of foreign affairs. *Hernandez v. Mesa*, 589 U.S. 93, 103-04 (2020). Congress also has "broad authority" under the Commerce Clause to regulate people and things in interstate commerce, as well as activities that substantially affect interstate commerce. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012). Finally, Congress is authorized to "lay and collect Taxes," U.S. Const. art. I, § 8, cl. 1.

"[T]he Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact

laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *United States v. Comstock*, 560 U.S. 126, 133-134 (2010). Accordingly, Congress may legislate in these areas so long as its legislative choices are "rationally related" to such enumerated powers. *Id.*; *see Gonzales v. Raich*, 545 U.S. 1, 22 (2005) ("In assessing the scope of Congress' authority under the Commerce Clause, we stress that the task before us is a modest one. We need not determine whether [the regulated] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding.").

When making this determination, courts "must accord substantial deference to the predictive judgments of Congress." *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997). Congress's considered judgments must not be disturbed if Congress "has drawn reasonable inferences based on substantial evidence." *Id.* (citation omitted); *see also United States v. Viscome*, 144 F.3d 1365, 1371 (11th Cir. 1998) (according substantial deference to Congress's "explicit findings that the proscribed activity in issue substantially affected interstate commerce"). Further, in the sensitive area of national security and foreign affairs, courts "lack . . . competence" in collecting evidence and drawing factual inferences. *Holder v. Hum. L. Project*, 561 U.S. 1, 34 (2010) (citation omitted). When the political branches have "adequately substantiated their determination" that regulating conduct is necessary to meet

3

identified national security needs, courts give "significant weight" to the determination. *Id*. at 36.

## II. The Corporate Transparency Act Is a Legitimate Exercise of Congress's Authorities.

In enacting the CTA, Congress "amass[ed] and evaluate[d] … vast amounts of data," *Turner*, 520 U.S. at 195, considering testimony, reports, and interests of various stakeholders—ranging from law enforcement,[2] the Executive Branch,[3]

---

[2] *See, e.g.*, 166 Cong. Rec. S7309 (daily ed. Dec. 9, 2020) (Sheriff Burke of Toledo, Lucas Cty. Sheriff, and U.S. Marshal Pete Elliott of Cleveland of the Northern District); H.R. Rep. No. 116-227, at 11-12 (2019) (FBI, Nat'l Dist. Attorneys Ass'n, Fraternal Order of Police, Nat'l Sheriff's Ass'n, Nat'l Ass'n of Asst. U.S. Attorneys); *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. 1 (2019) (Sen. Crapo, Chairman) ("[T]he Committee heard from witnesses from law enforcement and a banking regulator about what steps the U.S. should take to modernize its beneficial ownership regime and strengthen its enforcement.").

[3] *See, e.g.*, *President's FY 2019 Budget: Hrg., S. Comm. on Fin.*, 115th Cong. 20 (2018) (testimony from Department of the Treasury); *Combating Illicit Financing By Anonymous Shell Companies Through The Collection Of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019) (statements from the FBI and Financial Crimes Enforcement Network); *Corruption, Violent Extremism, Kleptocracy, and the Dangers of Failing Governance: Hrg., S. Comm. on Foreign Rels.*, 114th Cong. 5-13 (2016) (statements from the Departments of State and Justice and United States Agency for International Development); *Keeping Foreign Corruption Out of the United States: Four Case Histories: Hrg., Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.*, 111th Cong. (2010) (testimonies of the Departments of Homeland Security and the Treasury).

foreign governments,[4] intergovernmental expert bodies,[5] journalists,[6] small businesses,[7] multinational corporations,[8] the U.S. Chamber of Commerce,[9] national security experts,[10] international transparency organizations, the financial services

---

[4] *Combating Kleptocracy with Incorporation Transparency: Hrg., Comm. on Sec. & Coop. in Eur.*, 115th Cong. 7-9 (2017) (testimony from Delegation of the European Union); *id.* at 30 (noting transparency laws in the United Kingdom).

[5] *See, e.g.*, H.R. Rep. No. 116-227, at 11 (Financial Action Task Force); *The Annual Testimony: Hrg., H. Comm. on Fin. Servs.*, 115th Cong. at 16 (2017) (same).

[6] *See, e.g.*, 166 Cong. Rec. S7310 ("These exposures of abuses in our system by dedicated journalists and national and international transparency organizations have highlighted problems involving human trafficking, drug trafficking, terrorism, money laundering, fraud, tax evasion, and other crimes involving illicit finance.").

[7] *See, e.g.*, Small Bus. Majority, *Anti-Money Laundering Act of 2020* (June 29, 2020), https://shorturl.at/ehnGI ("Scientific opinion polling conducted on behalf of Small Business Majority found small business owners nationwide overwhelmingly believe Congress should pass legislation requiring businesses to list their true identity when forming."); Main Street All., *Anti-Money Laundering Act of 202*0 (June 26, 2020), https://shorturl.at/kwyBZ ("Requiring secretive businesses to come out from the shadows will benefit small businesses in several ways.").

[8] *See, e.g.*, Nat'l Foreign Trade Council et al., *Illicit Cash Act (S. 2563)* (June 17, 2020), https://shorturl.at/nDKQ0.

[9] *See* Letter from Chamber of Com. to U.S. Senate, at 2 (June 30, 2020), https://shorturl.at/astIN ("The Chamber values efforts by the sponsors of S. 2563 to address possible negative impacts that beneficial ownership disclosure could have on certain businesses.").

[10] Letter from Bipartisan Grp. of 91 Nat'l Sec. Experts to Comm. on Fin. Servs. (June 10, 2019), https://shorturl.at/akEGH (urging lawmakers to end anonymous companies).

industry, and many others.[11] Several committees and subcommittees held hearings.[12] One of the bill's lead sponsors repeatedly made the case that the United States was in a "clash of civilizations" between rule of law and criminality and kleptocracy and was endangered in that clash by financial secrecy. *See Tools of Transnational Repression: Hrg., Comm. on Sec. & Coop. in Eur.*, 116th Cong. 5 (2019).

Based on this extensive record, Congress concluded that collecting beneficial ownership information is necessary to protect national security and promote U.S. interests abroad, regulate interstate and international commerce, and facilitate tax collection. The district court concludes, without discovery or any discernible support from the thin record below, that Congress does not have authority to require disclosure of such information because incorporation is a "purely internal affair[]." *Nat'l Small Bus. United v. Yellen*, 2024 WL 899372, at *10 (N.D. Ala. Mar. 1, 2024). The district court points to nothing in the record that contradicts, or provides any

---

[11] *See, e.g.*, H.R. Rep. No. 116-227, at 12 (presenting views of 91 national security experts, human rights organizations, financial industry representatives, and real estate organizations).

[12] *See, e.g.*, *Promoting Corp. Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, 116th Cong. (2019); *Combating Kleptocracy: Hrg., S. Comm. on the Judiciary*, 116th Cong. (2019); *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019) (Sen. Crapo, Chairman); *Human Trafficking and its Intersection: Hrg., Subcomm. on Nat'l Sec. & Int'l Trade & Fin. of the S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. (2019).

reason for overriding, Congress's findings on the link between anonymous shell corporations and illicit international and interstate activity harming United States' interests. Given Congress's extensive findings, coupled with the lack of contrary record evidence, the district court's ruling should be reversed. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 330, n. 12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue.").

## A. National Security and Foreign Affairs

Congress compiled a voluminous record supporting its conclusion that the United States' failure to require incorporated companies to disclose their true beneficial owners threatens our national security and public safety. Previously, "most or all States d[id] not require information about the beneficial owners of the corporations, limited liability companies, or other similar entities formed under the laws of the State." Nat'l Defense Auth. Act for FY 2021, Pub. L. 116-283 § 6402(2), 134 Stat. 3388, 4604 (2021). This opacity empowered "malign actors" to "facilitate illicit activity, including money laundering, the financing of terrorism, proliferation

financing,[13] serious tax fraud, human and drug trafficking, counterfeiting, piracy, securities fraud, financial fraud, and acts of foreign corruption, harming the national security interests of the United States and allies of the United States." *Id.* § 6402(3). These bad actors would "intentionally conduct transactions through corporate structures in order to evade detection" and "layer such structures . . . across various secretive jurisdictions such that each time an investigator obtains ownership records for a domestic or foreign entity, the newly identified entity is yet another corporate entity, necessitating a repeat of the same process." *Id.* § 6402(4). Such dirty money snaked its way into the United States because American rule of law "actually protect[ed]" the money. *Combating Kleptocracy: Hrg., S. Comm. on the Judiciary*, 116th Cong., at 30:24-30:40 (2019) [hereinafter Combating Kleptocracy] (Sen. Graham, Chairman).

According to Treasury Secretary Yellen, "there's a good argument that . . . the best place to hide and launder ill-gotten gains is actually the United States." The legislative record supporting the CTA backs up that statement. U.S. Dep't of

---

[13] Proliferation financing encompasses "raising, storing, moving, and using funds, financial assets, or other economic resources in connection with the proliferation of weapons of mass destruction." *See* Dep't of Treasury, *2024 National Proliferation Financing Risk Assessment* (2024); *see also, e.g.*, *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. 1 (2019) (Additional Material Supplied for The Record) ("Financial Networks of Mass Destruction").

Treasury, *Remarks by Secretary of Treasury Janet L. Yellen at the Summit for Democracy* (2021). Anonymous LLCs impeded New York City's ability to trace the terrorism financing scheme that funded the September 11th attacks. *Promoting Corp. Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, 116th Cong. 16 (2019) [hereinafter Promoting Corp. Transparency] (Rep. Maloney). Two Russian oligarchs used shell companies to engage in "over $91 million in transactions" in the U.S. financial system, violating U.S. sanctions. *Staff Report: The Art Industry and U.S. Policies That Undermine Sanctions, Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.*, 116th Cong. 9 (2020). Law enforcement struggled to halt international drug cartels' "direct line to the opioid crisis in Ohio" due to a lack of basic information about relevant accounts. 166 Cong. Rec. 7310 (daily ed. Dec. 9, 2020) (Sen. Brown). And malign foreign money interferes with American elections, degrading democracy and the rule of law. *Combating Kleptocracy* at 27:37-28:58 (2019) (Sen. Whitehouse); *id.* at 21:20-22:19 (Sen. Feinstein, Ranking Member). Given the problem's severity, Congress concluded that pre-CTA laws were insufficient.

The clear and uniform ownership information the CTA requires is a rational response to this record of dangers. 166 Cong. Rec. S7311 ("Without these reforms, criminals, terrorists and even rogue nations could continue to use layer upon layer

9

of shell companies to disguise and launder illicit funds.").[14] The information prevents law enforcement from wasting "precious time and resources issuing subpoenas and chasing down leads—sometimes jumping from anonymous shell company to anonymous shell company—to secure basic information about who actually owns a company." *Id.* at S7310. The Executive Branch "commend[ed]" the bipartisan "measure that will help prevent malign actors from leveraging anonymity to exploit these entities for criminal gain." *See* Off. of Mgmt. & Budget, *Statement of Administrative Policy* (Oct. 22, 2019).

Congress found that the United States' foreign affairs and diplomatic interests necessitate the passage of the CTA.[15] While the United States has led the way in most areas of reform and transparency, "on this issue of anonymous shell

---

[14] *See also Opaque Shell Companies: A Risk to Nat'l Security, Public Health, and Rule of Law: Hrg., S. Caucus on Int'l Narcotics Control*, 118th Cong. (2024) (Elaine Dezenski) ("No financial tool has aided the drug cartels, the corrupt oligarchs, and the enemies of America more than the anonymous shell company . . . . [B]eneficial ownership information is vital to addressing the drug epidemic and other dangers to the homeland.").

[15] The district court's heavy reliance on *United States v. Bond,* 572 U.S. 844 (2014), to conclude that Congress's Foreign Affairs powers do not reach state law entities is inapposite. *Bond* was an as-applied challenge to the furthest reaches of the treaty power, *id.* at 855, not a facial challenge to an Act in its entirety. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987) (A "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

companies[, the United States has] long lagged behind other nations, and failed to require uniform and clear ownership information for firms at the time of their incorporation in the states." 166 Cong. Rec. S7310. Secretary Mnuchin testified that the nondisclosure of true beneficial owners "is not . . . just a U.S. issue, but our European partners are concerned as they make progress in this area and we don't." *The Annual Testimony: Hrg., H. Comm. on Fin. Servs.*, 115th Cong. 17 (2017). The record reveals concern that these advances would push bad corporate actors to "new dark homes, and America must not become that new dark home." *Combating Kleptocracy* at 29:14-29:41 (2019) (Sen. Whitehouse). Accordingly, Congress reasonably concluded that the CTA is necessary to align with international standards, H.R. Rep. No. 116-227, at 11, and preserve "the United States' global position as an international leader in free and fair markets," *Promoting Corp. Transparency* at 1 (2019) (Rep. Cleaver, Chairman).

### B. Interstate and Foreign Commerce

Congress, after intensive factfinding and the compilation of a voluminous record, also rationally concluded that anonymous shell corporations injure the integrity of the American financial system, placing the CTA squarely within Congress's Commerce Powers. "[M]ore than 2,000,000 corporations and limited liability companies are being formed under the laws of the States each year"; "money launderers and others involved in commercial activity intentionally conduct

11

transactions through corporate structures in order to evade detection, and may layer such structures . . . across various secretive jurisdictions"; and legislation requiring the collection of beneficial ownership information "is needed to . . . protect interstate and foreign commerce[.]" Pub. L. 116-283 § 6402(1), (4)-(5).

 Pre-CTA laws allowed anonymous shell companies to abuse the American financial system and avail themselves and their assets of the national market. *See, e.g.*, *Promoting Corp. Transparency* at 3-4 (2019) (Rep. Stivers, Rep. Waters). Such behaviors abounded. A foreign arms dealer formed 12 legal entities in the United States to carry out illegal arms dealing. *President's FY 2019 Budget: Hrg., S. Comm. on Fin.*, 115th Cong. 46 (2018) [hereinafter 2019 Budget] (Sec'y Mnuchin, Dep't of Treasury). Fraudsters laundered eight million dollars of Medicare profits by creating a series of shell companies. *Id.* Narcotics kingpins created multiple LLCs in Florida to hold real estate and other assets. *Id.* The financial costs of these transactions are significant—for example, Medicare fraud "cost the taxpayers $2.6 billion, . . . tarnish[ing] the reputation of . . . lifeline for seniors." 166 Cong. Rec. S7310.

Congress's response, the CTA, is grounded in its considered judgment that beneficial ownership information enables enforcement against anonymous legal entities that use incorporation laws to exploit the American financial system to reap unlawful profits. *See id*. Such regulation of economic activity with obvious interstate and international implications falls squarely within the heartland of Congress's

12

Commerce authority. *See Raich*, 545 U.S. at 17 (citations omitted) ("When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class."); *Perez v. United States*, 402 U.S. 146, 154-55 (1971) ("Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce."); *United States v. Ballinger*, 395 F.3d 1218, 1225-28 (11th Cir. 2005) (Congress may impose "relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the *means* of promoting or spreading evil, whether of a physical, moral or economic nature"). This nexus far surpasses the bar set in other Commerce Clause cases. *See, e.g.*, *Raich*, 545 U.S. at 5-10 (small amounts of marijuana grown for personal medical reasons); *907 Whitehead St. Inc. v. Gipson*, 701 F.3d 1345, 1350-51 (11th Cir. 2012) (cats living in local museum).

The omission of the words "interstate commerce" in the statute's operative text does not change this conclusion. The Supreme Court has never required such language for a statute to be a valid exercise of the Commerce Power. For example, in *Raich*, the Court upheld a law without such language based on solely on Congress's copious findings that the regulated activity substantially affected interstate commerce—while stressing that even "the absence of particularized findings does not call into question Congress' authority to legislate" on activity affecting interstate commerce. 545 U.S. at 21-22.

13

In any event, the CTA does specifically express the sense of Congress that "[f]ederal legislation providing for the collection of beneficial ownership information for corporations, limited liability companies, or other similar entities formed under the laws of the States is needed to . . . protect interstate and foreign commerce." Pub. L. 116-283 § 6402(5). In a case rejecting a Commerce Clause challenge to a statute with similar sense-of-Congress language, the Supreme Court held that "the District Court properly deferred to Congress' express findings" set forth in that provision. *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 277 (1981).

### C. Tax

The CTA's disclosure requirements will facilitate the federal government's ability to crack down on tax evasion, making the law an appropriate exercise of Congress's power to "lay and collect Taxes." U.S. Const. art. I, § 8, cl. 1; *see* 166 Cong. Rec. S7310. Congress found that, without mandatory disclosure of beneficial ownership information, shell companies could "conceal their beneficial owners and hinder government agencies or others in making legitimate determinations of ownership assets and income." *2019 Budget* at 46 (Sec'y Mnuchin, Dep't of Treasury) ("Treasury's ability to combat tax evasion and to detect, deter, and disrupt money laundering and terrorist financing would be greatly enhanced through reporting of beneficial ownership information at the time of company formation.").

14

Indeed, Congress's record shows that a foreign law firm used thousands of shell companies to evade taxes. *See Combating Kleptocracy* (testimony of Adam J. Szubin). The CTA is a rational exercise of Congress's tax authority in response.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

Respectfully submitted,

*/s/ Robin F. Thurston*
Robin F. Thurston
Heeyoung (Linda) Park
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
rthurston@democracyforward.org
lhpark@democracyforward.org
*Counsel for* Amici Curiae

15

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3455 words according to the word count function of Microsoft Word 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

*/s/ Robin F. Thurston*

Date: April 22, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, a true and accurate copy of the foregoing motion was electronically filed with the Court using the CM/ECF system. Service on counsel for all parties will be accomplished through the Court's electronic filing system.

*/s/ Robin F. Thurston*

Date: April 22, 2024

17