Case No. 24-10736

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

National Small Business United, *et al.*,

                Plaintiffs-Appellees,

v.

United States Department of the Treasury, *et al.*,

                Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Alabama, Case No. 5:22-CV-01448-LCB

**BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES**

Thomas A. Berry
   *Counsel of Record*
Brent Skorup
Jennifer J. Schulp
Alexander R. Khoury
Cato Institute
1000 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 789-5202
tberry@cato.org

*Counsel for Amicus Curiae*

May 20, 2024

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule No. 26.1(a)(6), *amicus* certify that the following persons have an interest in the outcome:

1. Berry, Thomas A., counsel for *amicus curiae*
2. Cato Institute, *amicus curiae*
3. Khoury, Alexander R., counsel for *amicus curiae*
4. Schulp, Jennifer J., counsel for *amicus curiae*
5. Skorup, Brent, counsel for *amicus curiae*

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. *Amicus* is not a subsidiary or affiliate of any publicly owned corporation and does not issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to *amicus*'s participation.

Respectfully submitted,

Dated: May 20, 2024          /s/ Thomas A. Berry

## TABLE OF CONTENTS

                                                                                                                             **Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF *AMICUS CURIAE* ........................................................................ 1

STATEMENT OF THE ISSUES .......................................................................... 2

INTRODUCTION AND
SUMMARY OF ARGUMENT ............................................................................. 2

ARGUMENT ......................................................................................................... 6

    I.    THE CTA'S REPORTING REQUIREMENT COMPELS TESTIMONY IN VIOLATION OF THE FIFTH AMENDMENT. ........... 6

        A.    The Mandated Beneficial Owner Disclosures Are Testimonial. .......... 7

        B.    The Beneficial Owner Disclosures Do Not Fall Within the "Required Records Exception" to the Fifth Amendment Privilege. .................................................................................................. 10

CONCLUSION .................................................................................................... 12

CERTIFICATE OF COMPLIANCE .................................................................. 14

CERTIFICATE OF SERVICE ........................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Fisher v. United States*, 425 U.S. 391 (1976) .................................................. 6, 11

*Grosso v. United States*, 390 U.S. 62 (1968). ....................................................... 11

*In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335 (11th Cir. 2012) ........................................................................... 11

*Marchetti v. United States*, 390 U.S. 39 (1968) .................................................... 11

*Shapiro v. United States*, 335 U.S. 1 (1948) ......................................................... 10

*United States v. Doe*, 465 U.S. 605 (1984) .............................................................. 8

*United States v. Hubbell*, 530 U.S. 27 (2000) ......................................................... 7

**Statutes**

18 U.S.C. § 1341 ....................................................................................................... 9

31 U.S.C. § 5336(a)(1) .............................................................................................. 8

31 U.S.C. § 5336(a)(3) .............................................................................................. 8

31 U.S.C. § 5336(b) .................................................................................................. 3

31 U.S.C. § 5336(b)(2)(A) ........................................................................................ 8

31 U.S.C. § 5336(c) .................................................................................................. 5

31 U.S.C. § 5336(h) .................................................................................................. 6

31 U.S.C. § 5336(h)(5)(A) ........................................................................................ 3

The Corporate Transparency Act, Pub. L. No. 116-283, 134 Stat. 3388 (codified at 31 U.S.C. § 5336) (2021) ................................................. 3, 9, 10, 12

**Regulations**

31 C.F.R. § 1010.380(a)(1)(iii) ................................................................................. 8

87 Fed. Reg. 59498 (Sept. 30, 2022) ........................................................................ 8

**Constitutional Provisions**

U.S. CONST. amend. V .............................................................................................. 6

## Other Authorities

DEP'T OF THE TREAS., SMALL ENTITY COMPLIANCE GUIDE (Dec. 2023) ................... 9

GILES JACOB, BANKRUPT, A NEW LAW-DICTIONARY (Henry Lintot 6th ed. 1750) ........................................................................................................ 5

Norbert Michel & Jennifer J. Schulp, *Revising the Bank Secrecy Act to Protect Privacy and Deter Criminals*, Cato Institute Policy Analysis No. 932, CATO INST. (July 26, 2022) ............................................................. 3

*Protecting Yourself Against Doxing*, N.C. DEP'T INFO. TECH. (last visited May 16, 2024) ............................................................................................... 4

Samuel A. Alito Jr., *Documents and the Privilege against Self-Incrimination*, 48 U. PITT. L. REV. 27 (1986) ............................................. 5, 6, 7

T. CUNNINGHAM, ATTACHMENT, BANKRUPTCY, A NEW AND COMPLETE LAW-DICTIONARY, OR, GENERAL ABRIDGMENT OF THE LAW (London, S. Crowder & J. Coote 1764) ......................................................................... 5

THOMAS POTTS, A COMPENDIOUS LAW DICTIONARY (London, T. Ostell 1803) ................................................................................................................ 5

William J. Moon, *Anonymous Companies*, 71 DUKE L.J. 1425 (2022) .................... 4

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Toward that end, Cato's Robert A. Levy Center for Constitutional Studies publishes books and studies about legal issues, conducts conferences, produces the annual *Cato Supreme Court Review*, and files *amicus* briefs in federal courts across the country. Cato's Center for Monetary and Financial Alternatives focuses on identifying, studying, and promoting alternatives to centralized, bureaucratic, and discretionary financial regulatory systems.

Cato Institute scholars have published extensive research on financial regulation and constitutional law. Cato has also filed many *amicus curiae* briefs concerning the continued vitality of the Constitution's Bill of Rights and its ability to act as a meaningful restraint on the exercise of government power. This case interests Cato because it concerns the legality of a new, massive data collection effort by the Treasury Department for the purpose of enforcing federal criminal law.

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

1

## STATEMENT OF THE ISSUES

Whether the Treasury Department's required disclosure of "beneficial owner" information for the purpose of enforcing various federal financial criminal statutes violates the Fifth Amendment to the United States Constitution.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The quest for security is too often invoked to justify an infringement of civil liberties. In this case the government defends a law forcing Americans to record and transmit routine details of their lives and businesses as supposedly necessary to increase the efficiency of law enforcement. But our Constitution was not drafted to maximize government efficiency; it was written to protect and extend Americans' liberty. Familiar with general warrants and compelled testimony under British rule, the Framers of the U.S. Constitution put intentional limits on the federal government's ability to access Americans' private information. This case presents the Court with an opportunity to clarify the limits of regulators' power to demand and collect Americans' sensitive financial information for the purposes of criminal law enforcement.

Nestled in the over 1,500 pages of the 2021 National Defense Authorization Act is an innocuous-sounding law that dramatically expands government surveillance of millions of Americans. This new law significantly added to the requirements of several other laws aimed at curbing financial crimes, including the

2

Bank Secrecy Act, a governmental surveillance scheme that requires financial institutions to assist U.S. government agencies in detecting and preventing money laundering.[2] The new law, known as the Corporate Transparency Act (CTA), requires most entities incorporated under state law to collect and produce information about their "beneficial owners." *See* Pub. L. No. 116-283, 134 Stat. 3388, 4604 (codified at 31 U.S.C. § 5336) (2021). Essentially, anyone who happens to own or be closely affiliated with a state-incorporated limited liability corporation (LLC) or nonprofit corporation must send their personal information to their "reporting company" (typically, the LLC or nonprofit corporation that the person formed or is affiliated with). 31 U.S.C. § 5336(b). That company must transmit a beneficial owners' identification and personal information to the Financial Crimes Enforcement Network, popularly known as "FinCEN." *Id.* FinCEN is a bureau of the U.S. Treasury Department that collects, analyzes, and disseminates financial intelligence.

The CTA rightly characterizes as "sensitive" the information it mandates companies to provide. 31 U.S.C. § 5336(h)(5)(A). Indeed, the ability to remain

---

[2] Many of these other laws are also constitutionally suspect due to the extent of governmental surveillance of Americans' private financial activities. *See, e.g.*, Norbert Michel & Jennifer J. Schulp, *Revising the Bank Secrecy Act to Protect Privacy and Deter Criminals*, Cato Institute Policy Analysis No. 932, CATO INST. (July 26, 2022), https://www.cato.org/policy-analysis/revising-bank-secrecy-act-protect-privacy-deter-criminals.

3

anonymous in connection with corporate ownership can protect entrepreneurs, shield politically unpopular enterprises, and encourage economic interests. *See* William J. Moon, *Anonymous Companies*, 71 DUKE L.J. 1425 (2022). Business owners and nonprofit managers may decline to reveal their connection to LLCs and charities for many legitimate personal and business reasons. These include, for example, the desire to make landlord-tenant relationships easier, to protect the privacy of family members and business partners, or to gain added protection against intimate partner harassment, malicious targeting, and "doxing."[3]

Disregarding these concerns, the CTA requires business owners and managers to produce sensitive information about themselves and—in many cases—their family members and senior employees. In turn, companies must transmit that sensitive information for FinCEN to compile in a database for financial crime enforcement and regulatory investigations. Critically, the CTA also empowers FinCEN to function as a new, global tipster—Congress has authorized FinCEN to share beneficial owners' sensitive information with international law enforcement

---

[3] *See, e.g.*, *Protecting Yourself Against Doxing*, N.C. DEP'T INFO. TECH. (last visited May 16, 2024), https://tinyurl.com/369behh2 (explaining that "hackers . . . use public records, such as property records and tax documents, and search social media and real estate websites" in order to "perpetrate harassment, revenge, identity theft or potential violence against a target"); Moon, *supra*, at 1459.

4

and international intelligence agencies, U.S. intelligence agencies, the I.R.S., and state and local law enforcement agencies. *See* 31 U.S.C. § 5336(c).

The CTA suffers from several constitutional deficiencies.[4] This *amicus* brief focuses on just one: Because beneficial owners must produce records that may be used against them in a future criminal proceeding, the CTA's reporting requirements compel testimony in violation of the Fifth Amendment. These records do not fall within the "required records exception" to the Fifth Amendment because they are not customarily kept, nor do they have "public aspects." As Justice Samuel Alito wrote when he was Deputy Assistant Attorney General, "the compulsory organization, filing, and creation of documents are acts that clearly are testimonial and may be self-incriminating." Samuel A. Alito Jr., *Documents and the Privilege against Self-Incrimination*, 48 U. PITT. L. REV. 27, 75 (1986). Regarding such

---

[4] For instance, FinCEN appears to be seizing Fourth Amendment-protected "effects" without a warrant. "Effects" almost certainly includes one's financial records. Founding-era legal dictionaries specifically contemplate and define one's financial records as one's "effects." *See* 1 T. CUNNINGHAM, ATTACHMENT, BANKRUPTCY, A NEW AND COMPLETE LAW-DICTIONARY, OR, GENERAL ABRIDGMENT OF THE LAW (London, S. Crowder & J. Coote 1764) (quoting a directive of the Lord Commissioners providing rules for transfers and custody of "sum[s] of money, tallies, orders, bonds, deposits, securities, and other effects"); GILES JACOB, BANKRUPT, A NEW LAW-DICTIONARY (Henry Lintot 6th ed. 1750) (noting that the Commissioners should assign "the Bankrupt's Effects" to those chosen by creditors); THOMAS POTTS, A COMPENDIOUS LAW DICTIONARY 39, 52, 192, 219 (London, T. Ostell 1803) (advising, for example, that a bankrupt person must "disclose and discover all his estate and effects, real and personal").

5

compulsory record keeping, future-Justice Alito added, "The individual should be free to refuse to create or organize records on fifth amendment grounds." *Id*. at 76. Yet the CTA *criminalizes* asserting one's Fifth Amendment privilege—refusal to contribute one's information to this international surveillance system risks civil and criminal penalties. *See* 31 U.S.C. § 5336(h).

The district court correctly ruled that the CTA exceeded Congress's constitutional powers, permanently enjoining the CTA's enforcement against plaintiffs Isaac Winkles and the National Small Business Association (NSBA). That court did not address the Fifth Amendment claims raised by Winkles and the NSBA, but it is equally clear that the CTA's provisions violate Americans' right against compelled self-incrimination. The Fifth Amendment provides another ground for this Court to affirm the decision below.

## ARGUMENT

### I. THE CTA'S REPORTING REQUIREMENT COMPELS TESTIMONY IN VIOLATION OF THE FIFTH AMENDMENT.

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. It was understood at the time of the Founding that the common law barred the compelled production of self-incriminatory documents, including the production of corporate records. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 418 n.4 (1976) (Brennan, J., concurring) ("Without a doubt, the common-

6

law privilege against self-incrimination in England extended to protection against the production of incriminating personal papers prior to the adoption of the United States Constitution."); Alito, *supra*, at 65 ("English precedents at the time of the adoption of the fifth amendment extended the protection of the privilege against self-incrimination to corporate as well as individual records.") (citations omitted). The beneficial owner information demanded by the CTA is testimonial and does not fall within the "required records exception" to the Fifth Amendment privilege against self-incrimination.

### A. The Mandated Beneficial Owner Disclosures Are Testimonial.

The CTA's reporting requirements amount to an indefinite production order imposed on state corporations, other similar entities, and millions of large and small business owners. These requirements sweep in new kinds of identifying—and testimonial—information from millions of law-abiding Americans. The mere production of the records may be considered testimonial. *See, e.g.*, *United States v. Hubbell*, 530 U.S. 27, 36 (2000) ("[W]e have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect."). For that reason, the Supreme Court has rejected, on Fifth Amendment grounds, the government's "broad-sweeping subpoenas" that "attempt[] to compensate for its lack of knowledge by requiring [someone] to become, in effect, the primary informant against himself." *United States v. Doe*, 465 U.S. 605, 613 n.12

(1984) (quoting appellate court's affirmance of district court's findings). For similar reasons, FinCEN's requirement that people disclose the fact that they are beneficial owners violates their Fifth Amendment right against self-incrimination.

Americans will imminently face penalties for refusal to participate in this surveillance scheme. In September 2022, FinCEN issued a final rule formally implementing the CTA's reporting requirements. 87 Fed. Reg. 59498 (Sept. 30, 2022) (codified at 31 C.F.R. § 1010.380). The disclosure rule went into effect earlier this year and affects tens of millions of existing LLCs and business owners.[5] 31 C.F.R. § 1010.380(a)(1)(iii).

Pursuant to the CTA, these "reporting companies" must identify each "beneficial owner"[6] of the company, collect the names, addresses, dates of birth, and driver's licenses or passports of those people, and turn that information over to FinCEN. 31 U.S.C. §§ 5336(a)(1), (b)(2)(A). Though the disclosure requirements

---

[5] According to FinCEN, the CTA is projected to affect a total of 32.6 million existing entities and 5 million newly established entities each year between 2025 and 2034. 87 Fed. Reg. 59498, 59549 (Sept. 30, 2022).

[6] Notably, a "beneficial owner" is vaguely defined in the statute but includes anyone who "directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise exercises substantial control over" a corporation, limited liability company (LLC), or similar organization. 31 U.S.C. § 5336(a)(3). Particularly for a small or family business, a "beneficial owner" plausibly would include family members with a tenuous connection to the business and any senior employee who is not in leadership but nevertheless "indirectly . . . exercises substantial control" over the business.

are nominally aimed at "reporting companies," FinCEN is clear in its guidance that any person who willfully fails to transmit their sensitive and personal information to their purported reporting company faces criminal prosecution. DEP'T OF THE TREAS., SMALL ENTITY COMPLIANCE GUIDE 15 ¶1.3 (Dec. 2023). Individual beneficial owners, therefore, should be able to assert their Fifth Amendment privilege because FinCEN disclosure rules apply directly to them.

These disclosures are testimonial. The CTA and FinCEN's implementing regulations require people to report their beneficial ownership status, which communicates facts about their ownership of, or participation in, certain commercial and nonprofit entities. These disclosures convey facts necessary to potentially establish culpability for a litany of financial crimes. *See, e.g.*, 18 U.S.C. § 1341 (criminalizing the creation of "schemes" to defraud persons through certain means).

Further, this disclosure and collection scheme was clearly developed primarily for law enforcement purposes. Congress has identified state corporate entities as providing a means for those engaging in a wide array of financial crimes and international terrorism to conceal their identities. Pub. L. No. 116-283, 134 Stat. 3388, 4604 (2021). The government's principal concern is that the beneficial owners of state corporate entities might someday, perhaps in the distant future, participate in some kind of illicit activity through the entity. *See id*. The law therefore requires Americans to create and produce these new records, empowering federal prosecutors

to establish and maintain a massive database of beneficial owners to enforce financial criminal laws more efficiently. *See id.* (instructing the Secretary of the Treasury to "collect information in a form and manner that is reasonably designed to generate a database that is highly useful to national security, intelligence, and law enforcement agencies and Federal functional regulators"). In short, these disclosures are compelled, they are testimonial, and they can be used in criminal investigations against those covered by the CTA.

### B. The Beneficial Owner Disclosures Do Not Fall Within the "Required Records Exception" to the Fifth Amendment Privilege.

One prominent exception to the Fifth Amendment privilege against self-incrimination is the "required records" exception. *See Shapiro v. United States*, 335 U.S. 1, 32 (1948). In *Shapiro*, the Supreme Court affirmed a lower court's decision that compelling individuals to produce records by valid regulations does not violate the right against self-incrimination. *Id*.

However, FinCEN's data collection goes far beyond *Shapiro*, which was a 5-4 decision allowing a wartime price control office to obtain one month of invoices from a licensed commodity seller. *Id*. at 4. The majority opinion in *Shapiro* imposed a significant limitation: only records "customarily kept" fell within the exception. *Id*. at 42 (Frankfurter, J., dissenting). The Court reiterated this limitation in defining the required records exception 20 years later in *Grosso v. United States*:

10

>first, the purposes of the United States' inquiry must be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind that the regulated party has customarily kept; and third, the records themselves must have assumed "public aspects" that render them at least analogous to public documents.

390 U.S. 62, 67–68 (1968).

Accordingly, the Supreme Court in *Fisher* held that the production of tax documents by a taxpayer for the IRS were not testimonial only because "[t]he existence and location of the papers [were] a foregone conclusion." *Fisher*, 425 U.S. at 411. *See also In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1344 (11th Cir. 2012) (holding that records production is not testimonial when "the location, existence, and authenticity of the purported evidence is known with reasonable particularity").

The analysis is altogether different, however, when the government demands the production of new types of records or records that the government merely suspects an individual possesses. As the Supreme Court has explained, a government demand to "provide information, unrelated to any records which he may have maintained . . . is not significantly different from a demand that he provide oral testimony." *Marchetti v. United States*, 390 U.S. 39, 57 (1968).

The identities of beneficial owners collected by FinCEN is information that fails to satisfy the required records exception because Congress and FinCEN have ordered the creation of new records not "customarily kept" by "reporting

11

companies." Nor do these beneficial owner disclosures have "public aspects" that render them analogous to public documents. Quite the contrary: a major purpose of the CTA is to identify and record these currently unknown and un-recorded beneficial owners. *See* Pub. L. No. 116-283, 134 Stat. 3388, 4604 (2021) ("It is the sense of Congress that . . . most or all States do not require information about the beneficial owners of the corporations, limited liability companies, or other similar entities formed under the laws of the State."). Clearly, therefore, beneficial owner information is not customarily kept, nor does it have public aspects analogous to public documents.

In this way, the CTA requires the creation of new, testimonial records for use in future criminal investigations. The creation of these new documents for law enforcement purposes is testimony protected by the Fifth Amendment, and their mandated disclosure violates a nominal beneficial owner's rights against compelled self-incrimination. Government agencies cannot be allowed to mandate new "customs" of records collection and then use those "required customs" to evade Americans' Fifth Amendment rights.

## CONCLUSION

The CTA's reporting requirements, implemented through regulation, compel the disclosure of testimonial records by millions of American stakeholders for law enforcement purposes. Such a scheme violates the Fifth Amendment and, if the

12

Court were to reach that issue, this Court should affirm the lower court decision and maintain the permanent injunction.

Dated: May 20, 2024

Respectfully submitted,

Thomas A. Berry
    *Counsel of Record*
Brent Skorup
Jennifer J. Schulp
Alexander R. Khoury
CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 789-5202
tberry@cato.org

*Counsel for Amicus Curiae*

13

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2,772 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman typeface.

/s/Thomas A. Berry

Dated: May 20, 2024  *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on May 20, 2024, he electronically filed the foregoing *amicus curiae* brief with the Clerk of the Court for the Eleventh Circuit using the CM/ECF system. The undersigned also certifies that all participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/Thomas A. Berry

Dated: May 20, 2024                                *Counsel for Amicus Curiae*