No. 24-10736

# In the United States Court of Appeals for the Eleventh Circuit

NATIONAL SMALL BUSINESS UNITED,
D.B.A. NATIONAL SMALL BUSINESS ASSOCIATION, ISAAC WINKLES,

*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF THE TREASURY, ACTING DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK, SECRETARY, U.S. DEPARTMENT OF THE TREASURY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Alabama
No. 5:22-cv-01448-LCB

**BRIEF OF THE PROJECT FOR PRIVACY AND SURVEILLANCE ACCOUNTABILITY, INC. AS *AMICUS CURIAE* SUPPORTING APPELLEES AND AFFIRMANCE**

Gene C. Schaerr
Erik S. Jaffe
Brian J. Field
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Amicus Curiae*

No. 24-10736

*National Small Business United, et al. v.*
*U.S. Department of the Treasury, et al.*

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, and in addition to those persons and entities identified in the briefs of the parties, the Project for Privacy and Surveillance Accountability, Inc. (PPSA), identifies all additional attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1.    Field, Brian J., *Counsel for Amicus PPSA*

2.    Jaffe, Erik S., *Counsel for Amicus PPSA*

3.    Schaerr, Gene C., *Counsel for Amicus PPSA*

4.    SCHAERR | JAFFE LLP, *Counsel for Amicus PPSA*

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1, *Amicus Curiae* PPSA states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

*Amicus* further states that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................. C1

STATEMENT OF ISSUES ............................................................ 1

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* .................. 1

SUMMARY OF ARGUMENT ....................................................... 4

ARGUMENT .......................................................................... 5

I.    The CTA's Disclosure Requirements for Subsequent Use in
a Database Are Fourth Amendment Searches. ......................... 6

A.    Beneficial owners easily clear the low bar for a
subjective expectation of privacy ..................................... 7

B.    The expectation of privacy is objectively reasonable. ........ 9

II.   The CTA's Disclosure Requirements for Subsequent Use in
a Database Are Unreasonable ................................................ 14

CONCLUSION ....................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*California Bankers Ass'n v. Shultz,*
   416 U.S. 21 (1974)....................................................................... 5, 12, 15

*Carpenter v. United States,*
   585 U.S. 296 (2018)............................................... 2, 4, 5, 6, 7, 8, 9, 12

*Chandler v. Miller,*
   520 U.S. 305 (1997)....................................................................... 14, 15

*Colorado v. Bannister,*
   449 U.S. 1 (1980)............................................................................ 5, 6, 14

*Commonwealth v. McCarthy,*
   142 N.E.3d 1090 (Mass. 2020) ............................................................ 9

*Donovan v. Dewey,*
   452 U.S. 594 (1981) .............................................................................. 16

*Flint v. Stone Tracy Co.,*
   220 U.S. 107 (1911) .............................................................................. 15

*Katz v. United States,*
   389 U.S. 347 (1967) ................................................................................ 6

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't,*
   2 F.4th 330 (4th Cir. 2021) ................................................................ 4, 9

*NAACP v. State of Ala. ex rel. Patterson,*
   357 U.S. 449 (1958).............................................................................. 11

*Nat'l Treasury Emps. Union v. Von Raab,*
   489 U.S. 656 (1989).............................................................................. 15

*Patel v. City of Los Angeles,*
   576 U.S. 409 (2015) .......................................................................... 8, 16

*Patel v. City of Los Angeles*,
   738 F.3d 1058 (9th Cir. 2013) .............................................................. 7, 8

*Rakas v. Illinois*,
   439 U.S. 128 (1978) ................................................................................. 7

*Skinner v. Ry. Lab. Executives' Ass'n*,
   489 U.S. 602 (1989) ............................................................................... 15

*Smith v. Maryland*,
   442 U.S. 735 (1979) ................................................................................. 7

*Statton v. Fla. Fed. Jud. Nominating Comm'n*,
   959 F.3d 1061 (11th Cir. 2020) ............................................................ 16

*United States v. Sandoval*,
   200 F.3d 659 (9th Cir. 2000) .................................................................. 7

**Constitutional Provision**

U.S. Const. amend. IV ................................................................................. 5

**Statute**

31 U.S.C. § 5336 ............................................................ 2, 4, 5, 6, 8, 9, 16

**Rule**

Fed. R. App. P. 29(a)(2) ............................................................................. 3

**Treatise**

3A Charles A. Wright & Arthur R. Miller,
   Federal Practice & Procedure § 663 (4th ed. 2023 update) .................. 7

**Other Authorities**

Ahmed Abbasi et al.,
   *Authorship identification using ensemble learning,*
   12 Sci. Reps. 9537 (2022) ..................................................................... 13

Br. in Support of Defs.' Mot. to Dismiss
  or, in the Alternative, Cr.-Mot. for Summ. J.,
  & Opp'n to Pls.' Mot. for Summ. J.,
  No. 5:22-cv-01448-LCB (N.D. Ala.), ECF No. 24-1 ............................ 14

Andrew Guthrie Ferguson,
  *Persistent Surveillance*, 74 Ala. L. Rev. 1 (2022) ................................ 12

Emily Nicolella,
  *Evolving Privacy Protections for Emerging Machine
  Learning Data Under* Carpenter v. United States,
  17 FIU L. Rev. 453 (2023) .................................................................... 13

Paul Ohm,
  *The Many Revolutions of* Carpenter,
  32 Harv. J.L. & Tech. 357 (2019) .......................................................... 12

Staff of H. Comm. on Judiciary & Select Subcomm.
  on the Weaponization of the Fed. Gov't,
  *Financial Surveillance In The United States:
  How Federal Law Enforcement Commandeered Financial
  Institutions To Spy On Americans* (Mar. 6 2024) ................................ 11

Matthew Tokson,
  *The Aftermath of* Carpenter: *An Empirical Study
  of Fourth Amendment Law, 2018-2021*,
  135 Harv. L. Rev. 1790 (2022) ............................................................. 10

Stephen Wagner,
  *Stopping Police in Their Tracks: Protecting Cellular
  Location Information Privacy in the Twenty-First Century*,
  12 Duke L. & Tech. Rev. 200 (2014) ................................................... 10

iv

## STATEMENT OF ISSUES

*Amicus* will address the following question only:

Whether this Court should also affirm because the Corporate Transparency Act's blanket requirement that State-law entities and their individual owners and applicants report personal information to the U.S. Department of Treasury for criminal law-enforcement purposes—in the absence of a warrant, probable cause, or reasonable suspicion of wrongdoing—violates "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" under the Fourth Amendment.

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

The court below held the Corporate Transparency Act ("CTA" or "the Act") unconstitutional after engaging in a thorough analysis of limits on government power. While the court's analysis and conclusion were correct, this case is also fundamentally a Fourth Amendment case—and more specifically, because of the CTA's database provisions, a high-tech surveillance case. And it raises a straightforward Fourth Amendment question: May the government compel sweeping disclosure of sensitive information, without any individualized judicial process or even

suspicion, for use in an expansive database for law enforcement purposes? The Supreme Court's recent precedent points to a straightforward and resounding answer: No.

The parties have written sufficiently about the intrusive nature of the Act's *disclosure* requirement, and how, in contrast to the historical norm of reporting corporate officers and directors to a state government, this requires disclosure of "beneficial owners" as well as employee information to the federal government. But the CTA's *database* provisions are even more disturbing. Under those provisions, the agency compiles information obtained from the Act's sweeping disclosure requirements into a database to be accessed by "Federal, State, and Tribal" authorities—a database that can then be queried with no judicial oversight. *See* 31 U.S.C. § 5336(d)(2).

This database thus has the sort of "depth, breadth, and comprehensive reach," that is simply incompatible with "'preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Carpenter v. United States*, 585 U.S. 296, 320, 305 (2018) (second quotation citation omitted). This poses a particular risk to beneficial owners of corporations used for ideological or nonprofit

purposes—a risk that will only grow with advances in artificial intelligence and data processing technology.

Because of the serious privacy issues they raise, the CTA's database provisions are of particular concern to *Amicus Curiae* Project for Privacy and Surveillance Accountability, Inc. (PPSA), a nonprofit, nonpartisan organization dedicated to protecting privacy rights and guarding against an expansive surveillance state. *Amicus* PPSA files this brief, pursuant to Fed. R. App. P. 29(a)(2), not only to urge this Court to affirm the district court, but also to decide this case on an alternative or additional Fourth Amendment ground: Specifically, that the government cannot sidestep the Fourth Amendment by requiring disclosure of information for use in a database that can then be searched without a probable-cause warrant or other judicial process that satisfies Fourth Amendment requirements.

## SUMMARY OF ARGUMENT

The Fourth Amendment protects against unreasonable searches and seizures, ensuring a Founding-era level of privacy despite technological advances. *Carpenter v. United* States, 585 U.S. 296, 305 (2018). This level of privacy is incompatible with the CTA's requirements for beneficial owners to disclose personal information on an ongoing basis for use in a comprehensive "database for beneficial ownership information" to be used by Treasury and other government agencies. 31 U.S.C. §§ 5336(d)(2), (b)(2)(A), (b)(1)(D).

Because of the database provision, such disclosures must be evaluated under the Supreme Court's high-tech surveillance precedent. *See Leaders of a Beautiful Struggle v. Baltimore Police Dep't,* 2 F.4th 330, 345 (4th Cir. 2021). And, given the risk of abuse—particularly for ideological or non-profit-oriented corporations—from such widespread data collection, they certainly constitute a "search" for Fourth Amendment purposes. The attendant risks will only grow worse with advances in artificial intelligence and data analysis technology.

And these searches are unreasonable because they are warrantless and do not fall under any explicitly delineated exception to the warrant

4

requirement. *See Colorado v. Bannister*, 449 U.S. 1, 2–3 (1980). They also

cannot be justified as part of longstanding income tax collection practices.

*See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 60 (1974).

## ARGUMENT

The Fourth Amendment provides that Americans have the right to

"be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures[.]" U.S. Const. amend. IV. That

Amendment is designed to ensure that Americans enjoy a level of privacy

at least equal to the privacy expectations that existed during the

Founding era. And, as the Supreme Court has held, the Amendment

should therefore be understood to "safeguard the privacy and security of

individuals against arbitrary invasions by governmental officials" to a

similar level. *Carpenter*, 585 U.S. at 303–04.

But the CTA—among other requirements more fully set forth in the

parties' briefs—requires extensive reporting of beneficial owners'

personal identifying information, including filing a new report any time

the beneficial owner obtains a new identification document such as a

driver's license. 31 U.S.C. §§ 5336(b)(2)(A), (b)(1)(D). And all this

information mut be stored in an "accurate, complete, and highly useful

5

database for beneficial ownership information" to be used in conjunction with "Federal, State, and Tribal" authorities, and can apparently be queried by those authorities at will. *Id.* § 5336(d).

As shown below, these reporting requirements constitute Fourth Amendment searches because their potential for abuse, particularly in light of the database provisions and advancing technology, is incompatible with Founding-era expectations of privacy. *Carpenter*, 585 U.S. at 320 (discussing the threat posed by comprehensive databases). And the resulting searches are not reasonable because they bypass the judicial process and do not fall within any of the exceptions to the Fourth Amendment warrant requirement. *See Colorado v. Bannister*, 449 U.S. 1, 2–3 (1980). Thus, the CTA is unconstitutional, and this Court can and should affirm the judgment below on Fourth Amendment grounds.

## I.    The CTA's Disclosure Requirements for Subsequent Use in a Database Are Fourth Amendment Searches.

A Fourth Amendment search occurs when information or items are seized, the person has a subjective expectation of privacy in the information or items seized, and the expectation would have been recognized as reasonable at the time of the Founding. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *Carpenter*, 585

U.S. at 305. Here, the required disclosures, particularly in light of their subsequent use in a database, violate both subjective and objective expectations of privacy, and thus constitute searches.

### A. Beneficial owners easily clear the low bar for a subjective expectation of privacy.

All that is required for a subjective expectation of privacy is that an individual "has shown that he seeks to preserve something as private." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (cleaned up). It is such a low bar that it "is not frequently litigated." 3A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 663 (4th ed. 2023 update) (Scope of Fourth Amendment—Definition of Search). Even a "burglar plying his trade in a summer cabin during the off season may have a thoroughly justified *subjective* expectation of privacy[.]" *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (emphasis added); *accord United States v. Sandoval*, 200 F.3d 659, 660 (9th Cir. 2000).

Here, the fact the information at issue was generally kept private prior to disclosure is sufficient to confer a subjective expectation of privacy—a common-sense proposition that need not be proven with record evidence. *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) ("We do not believe business owners are required to prove that

7

proposition, any more than homeowners are required to prove that papers stored in a desk drawer are subject to a reasonable expectation of privacy."), *aff'd*, 576 U.S. 409 (2015). Accordingly, "[t]he 'papers' protected by the Fourth Amendment include business records" in which the business has a "possessory" or "ownership interest[,]" and the similar private records at issue here.[1] *Id.* at 1061.

These expectations of privacy are heightened when information seized will be used as part of a database with "depth, breadth, and comprehensive reach," like the one here. *Carpenter*, 585 U.S. at 320; 31 U.S.C. § 5336(d)(2) (mandating an "accurate, complete, and highly useful database for beneficial ownership information"). Thus, beneficial owners would have a subjective expectation of privacy even for information that might ordinarily be publicly disclosed, or that is requested from a third party. *Id.* at 310 ("what one seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (cleaned up)).

---

[1] There is also an objectively reasonable expectation of privacy in such records. *Patel v. City of Los Angeles*, 576 U.S. 409, 424 (2015) (analyzing whether "closely regulated" exception applies, which is only relevant if there is both a subjective and objectively reasonable expectation of privacy.).

**B.     The expectation of privacy is objectively reasonable.**

In determining whether the disclosure requirements constitute a search, the Court must also consider how the disclosed information will be used in a database or "in combination with other information[.]" *Carpenter*, 585 U.S. at 312; *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 345 (4th Cir. 2021) (considering how data from multiple sources would be combined by analysts in determining a privacy violation). And, when the database is sophisticated or comprehensive, as it is here, courts should apply the Fourth Amendment test associated with high-tech surveillance techniques. *Leaders of a Beautiful Struggle*, 2 F.4th at 341, 345 (stating "*Carpenter* applies squarely to this case" brought to "challenge the creation of a retrospective database"); *Commonwealth v. McCarthy*, 142 N.E.3d 1090, 1101 (Mass. 2020) (applying *Carpenter* and analogous state-law test only because data was collected for use in large database); 31 U.S.C. § 5336(d)(2) (mandating an "accurate, complete, and highly useful database for beneficial ownership information" to be used in conjunction with "Federal, State, and Tribal" authorities).

The Supreme Court has explained in *Carpenter* that such a test should consider (1) the amount and intimacy of information collected, (2) the number of people surveilled, (3) inescapability of the surveillance, (4) whether there is automatic disclosure of information, and (5) the cost of the surveillance. *See, e.g.*, Matthew Tokson, *The Aftermath of* Carpenter*: An Empirical Study of Fourth Amendment Law, 2018-2021*, 135 Harv. L. Rev. 1790, 1800 (2022). And here, all five *Carpenter* factors show that the CTA's collection for database usage constitutes a search.

1.     The CTA's collections for use in a database easily implicate the first *Carpenter* factor because financial surveillance can reveal extraordinarily personal information such as "personal affairs, opinions, habits, and associations." Stephen Wagner, *Stopping Police in Their Tracks: Protecting Cellular Location Information Privacy in the Twenty-First Century*, 12 Duke L. & Tech. Rev. 200, 210–11 (2014) (quoting *Miller v. United States*, 425 U.S. 435, 448–49 (1976) (Brennan, J., dissenting)). This is a particular danger for corporations designed to facilitate non-profit associations without tax-exempt status, or for-profit entities with an ideological focus—such as dealers in controversial political literature. Much like membership in a tax-exempt organization,

10

disclosing this information could subject the beneficial owners to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

Disclosure of such information could also subject beneficial owners to retaliatory investigations, a real concern given the emerging pattern of politically-tinted investigations by the Department and other federal agencies. For instance, the Department entity at issue here—known as the Financial Crimes Enforcement Network or FINCEN—has encouraged banks to comb through transactions involving sporting goods stores such as Cabela's to identify "extremists," and other agencies have urged flagging purchases associated with major political candidates. *See* Staff of H. Comm. on Judiciary & Select Subcomm. on the Weaponization of the Fed. Gov't, *Financial Surveillance In The United States: How Federal Law Enforcement Commandeered Financial Institutions To Spy On Americans* 2–3 (Mar. 6 2024), available at https://tinyurl.com/3atzt7cd.

Even if this were not enough, the collection for database usage must be evaluated in light of foreseeable future technology, including rapidly

advancing artificial intelligence. A proper Fourth Amendment analysis cannot leave the public "'at the mercy of advancing technology,'" *Carpenter*, 585 U.S. at 305 (citation omitted). Instead, "the rule the Court adopts 'must take account of more sophisticated systems that are already in use or in development.'" *Id.* at 313 (quoting *Kyllo v. United States*, 533 U.S. 27, 36 (2001)).

Even in the 1970s, it was known that financial surveillance "can reveal much about a person's activities, associations, and beliefs." *Shultz*, 416 U.S. at 78–79 (Powell, J., concurring). But "modern technology tends to produce databases of telephone or financial information that are far more voluminous and detailed than the records at issue in those 1970s cases[.]" Paul Ohm, *The Many Revolutions of* Carpenter, 32 Harv. J.L. & Tech. 357, 381 (2019). The ability to aggregate information from multiple databases enhances the utility of the data, making it more revealing than when considered individually. *See* Andrew Guthrie Ferguson*, Persistent Surveillance*, 74 Ala. L. Rev. 1, 47–48 (2022).

For example, even now, machine learning methods are able to detect consistent authors from a few anonymous writings. *See* Ahmed Abbasi et al., *Authorship identification using ensemble learning,* 12 Sci.

12

Reps. 9537 (2022). It is easy to imagine a scenario where an agency dislikes views expressed in anonymous social media posts, identifies the author, looks for any businesses where the author has beneficial ownership, and "flags" that business for review to banks. Society must thus recognize a reasonable expectation of privacy against such a database to preserve Founding-era levels of privacy. And the privacy implications problems will only become worse as increasingly sophisticated AI systems are able to analyze "in the aggregate these millions of data points" to find intimate personal details from large databases. Emily Nicolella, *Evolving Privacy Protections for Emerging Machine Learning Data Under* Carpenter v. United States, 17 FIU L. Rev. 453, 474 (2023).

2.    The other *Carpenter* factors also support this conclusion. As to the second, the CTA collects this from millions or tens of millions of businesses. Third, such collection is inescapable due to its being legally mandated—with no way to remove one's name from the database even after many years. Fourth, the disclosure is effectively automatic due to being required by law. Finally, collecting it costs the government no more

than processing submitted forms (or running a query into a database), encouraging mass surveillance.

Thus, there is today a reasonable expectation of privacy against the CTA's collection of financial data for use in a database that can then be queried at will by government enforcement agents.

## II. The CTA's Disclosure Requirements for Subsequent Use in a Database Are Unreasonable.

Such collections are also unreasonable. On that issue, it "is axiomatic that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions.'" *Bannister*, 449 U.S. at 2–3 (quoting *Katz*, 389 U.S. at 357). The CTA's disclosure requirements do not involve individualized judicial process and so they are unreasonable per se.

The government nevertheless argues that the special need exemption applies. *See* Br. in Support of Defs.' Mot. to Dismiss or, in the Alternative, Cr.-Mot. for Summ. J., & Opp'n to Pls.' Mot. for Summ. J. at 45, No. 5:22-cv-01448-LCB (N.D. Ala.), ECF No. 24-1. However, that exception only applies for "concerns *other* than crime detection[,]" *Chandler v. Miller*, 520 U.S. 305, 313–14 (1997) (emphasis added). And,

14

as the government has conceded, the CTA "generally contemplates that reported information be used to facilitate the investigation and prosecution of financial crimes." Appellants' Br. at 8–9.

Even where the special needs exemption does it apply, moreover, it only applies to government or quasi-government settings, such as heavily "regulated industries, or its operation of a government office, school, or prison," *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 620 (1989), or in positions involving "extraordinary safety and national security hazards." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 657 (1989). And, in evaluating such an exception, "courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." *Chandler*, 520 U.S. at 314. This exception cannot plausibly apply to millions of beneficial owners.

Nor can the database's relation to possibly solving tax-related crimes exempt it from the Fourth Amendment. This is far from "the ordinary procedure . . . of requiring tax returns to be made," *Flint v. Stone Tracy Co.*, 220 U.S. 107, 175 (1911), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985), or "the settled practices of the tax collection process[,]" *Shultz*, 416 U.S. at 60. And this

15

is especially true when the program calls for collection and subsequent use in an indefinitely stored database—used in cooperation with agencies that do not even enforce federal tax law. *See* 31 U.S.C. § 5336(d)(2) ("State[] and Tribal" authorities will be involved).

Nor does the administrative search exception apply: Application of that exception is foreclosed by the lack of individualized judicial process, or meaningful opportunity to contest any search—either of the initial disclosures, or of the database usage. *Patel*, 576 U.S. at 420.

Nor does this program fall within the exception for "closely regulated industries," which includes only a handful of industries that have either been heavily regulated according to longstanding custom, or are newly emergent and especially dangerous. *Id.* at 424; *Donovan v. Dewey*, 452 U.S. 594, 606 (1981). The banking industry falls well outside that category.

Thus, no exceptions apply, and the searches are unreasonable because they are warrantless. Accordingly, this Court can and should affirm the district court's decision on Fourth Amendment grounds, which are apparent from the record below. *See Statton v. Fla. Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1065 (11th Cir. 2020).

16

## CONCLUSION

As government surveillance grows increasingly intrusive with advancing technology, the judiciary should heed the Supreme Court's call to preserve Founding-era expectations of privacy, rather than leaving the public at the mercy of rapidly changing technology. This Court should affirm the judgment below on Fourth Amendment grounds.

May 20, 2024                                    Respectfully submitted,

                                                */s/ Gene C. Schaerr*
                                                Gene C. Schaerr
                                                Erik S. Jaffe
                                                Brian J. Field
                                                SCHAERR | JAFFE LLP
                                                1717 K Street NW, Suite 900
                                                Washington, DC 20006
                                                Telephone: (202) 787-1060
                                                gschaerr@schaerr-jaffe.com

                                                *Counsel for Amicus Curiae*

17

## CERTIFICATE OF COMPLIANCE

The foregoing Brief of the Project for Privacy and Surveillance Accountability, Inc. as *Amicus Curiae* Supporting Appellees and Affirmance complies with the type-volume limit of Fed. R. App. P. 29(a)(5), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,043 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: May 20, 2024

/s/ Gene C. Schaerr
Gene C. Schaerr