No. 24-10736

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NATIONAL SMALL BUSINESS UNITED D.B.A. NATIONAL SMALL
BUSINESS ASSOCIATION, ISAAC WINKLES

*Plaintiffs-Appellees,*

versus

U.S. DEPARTMENT OF TREASURY, SECRETARY OF THE U.S.
DEPARTMENT OF THE TREASURY, DIRECTOR OF THE FINANCIAL
CRIMES ENFORCEMENT NETWORK,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Northern District of Alabama, No. 5:22-CV-01448-LCB

SUPPLEMENTAL BRIEF FOR APPELLEES

John C. Neiman, Jr.               Thomas H. Lee
MAYNARD NEXSEN P.C.               HUGHES HUBBARD & REED LLP
1901 Sixth Ave. N., Suite 1700    One Battery Park Plaza
Birmingham, Alabama 35203         New York, New York 10004
(205) 254-1000                    (212) 837-6000

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................. 2

1. THE DISTRICT COURT CORRECTLY HELD THAT THE CTA EXCEEDS CONGRESS'S ENUMERATED POWERS AND, THEREFORE, THAT NO APPLICATION OF THE CTA IS CONSTITUTIONAL ................................... 3

2. *NETCHOICE* DOES NOT APPLY TO THIS CASE ........................................ 6

3. UNDER THE PLAINTIFFS' FOURTH AMENDMENT THEORY, NO APPLICATION OF THE CTA IS CONSTITUTIONAL ................................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Los Angeles v. Patel,* 576 U.S. 409 (2015) .............................. 2, 3, 9

*Gonzales v. Raich*, 545 U.S. 1 (2005) .................................................. 5, 6

*Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024)
................................................................................... 1, 2, 6, 7, 8, 9

*National Federation of Independent Business v. Sebelius*, 567
U.S. 519 (2012) ................................................................................ 4, 8

*Sabri v. United States,* 541 U.S. 600 (2004) ..................................... 3, 6, 8

*United States v. Lopez*, 514 U.S. 549 (1995)
................................................................................... 1, 3, 4, 5, 6, 9

*United States v. Morrison*, 529 U.S. 598 (2000)
...................................................................................... 1, 4, 5, 6, 8, 9

*United States v. Raines*, 362 U.S. 17 (1960) ............................................ 8

*United States v. Salerno*, 481 U. S. 739 (1987) ......................................... 7

*Wickard v. Filburn*, 317 U.S. 111 (1942) ............................................... 5, 6

*Yazoo & Miss. Valley R.R. v. Jackson Vinegar Co.*, 226 U.S.
217 (1912) ............................................................................................. 8

**Constitutional Provisions**

U.S. Const. Amendment I ................................................................... 2

U.S. Const. Amendment IV .............................................. 2, 3, 7, 8, 9, 10

**Statutes**

Agricultural Adjustment Act ................................................................. 5

Controlled Substances Act ........................................................................ 5

Corporate Transparency Act (CTA), 31 U.S.C. 5336 *et seq.* ........... *passim*

Gun-Free School Zones Act ............................................................... 3, 8

Violence against Women Act (VAWA) .................................................. 4, 8

# Introduction

On August 14, 2024, this Court entered an order directing parties to file supplemental briefs addressing the question whether "the district court err[ed] in not holding the plaintiffs to their burden of showing that there are no constitutional applications of the Corporate Transparency Act." The answer is no.

The District Court correctly held that the plaintiffs were "entitled to judgment as a matter of law" because "the CTA exceeds the Constitution's limits on the legislative branch and lacks a sufficient nexus to any enumerated power to be a necessary or proper means of achieving Congress' policy goals." Doc. 51 at 3. The District Court holding necessarily means that the CTA has *no* constitutional applications. "After all, a law 'beyond the power of Congress' is 'no law at all.'" *Id.* at 16 (citation omitted).

In reaching this conclusion, the District Court faithfully adhered to Supreme Court precedents on facial challenges to declare and enjoin federal statutes as beyond Congress's Commerce powers, most notably, *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024), casts no doubt on the District Court's holding based on those Commerce Clause precedents. *NetChoice* involved an altogether different scenario: social-media companies obtained preliminary injunctive relief that

1

State laws were facially invalid under the First Amendment without determining the laws' "full set of applications." *Id.* at 2394. *NetChoice* is also inapplicable to the plaintiffs' alternative claim that there are no permissible applications of the CTA under the Fourth Amendment.

**Argument**

*NetChoice* and other Supreme Court's pronouncements against entertaining facial challenges do not apply to the plaintiffs' Commerce Clause and Fourth Amendment claims against the CTA here. First, if Congress lacks constitutional power to enact a federal statute, then that statute is facially invalid and has no constitutional applications.

Second, the plaintiffs' specific Fourth Amendment claim is that the CTA effects an unreasonable, warrantless search on every individual who is a beneficial owner of, or applicant for, an entity under State or Tribal law whom Congress has not deemed exempt. This claim does not depend on "case-specific facts" but rather characterizes the CTA as effecting an "abstract rul[e]"—if you own or apply for an entity under State or Tribal law, you must have that entity report your personal information to FinCEN for its law-enforcement database or face prison and fines—that has "no permissible application" to anyone. *City of Los Angeles v. Patel,* 576 U.S. 409, 429-30 (2015) (Scalia, J., dissenting) ("assum[ing]" that plaintiffs "may bring a facial challenge to the City's ordinance [requiring mo-

tels to allow police to inspect guest records] under the Fourth Amendment" but dissenting on the merits). Consequently, it is *up to this Court* to decide whether to accept "the plaintiff's characterization of his challenge" and "dispos[e] of it" on that ground as valid or invalid under the Fourth Amendment. *Id.* at 430. Indeed, as Justice Scalia, joined by Chief Justice Roberts and Justice Thomas, stated in *Patel*, there is "no reason why a plaintiff's self-description of his challenge as facial would provide an independent reason to reject it unless we were to delegate to litigants our duty to say what the law is." *Id.*

1. **The District Court correctly held that the CTA exceeds Congress's enumerated powers and, therefore, that no application of the CTA is constitutional.**

Facial Commerce Clause challenges tend to address "the basic question," as Justice Kennedy put it, of "whether Congress, in enacting the statutes challenged there, had exceeded its legislative power under the Constitution." *Sabri v. United States,* 541 U.S. 600, 610 (2004) (Kennedy, J., concurring). Each of the three key Commerce Clause precedents on which the plaintiffs rely work this way.

First, in *Lopez*, the Court declared that the Gun-Free School Zones Act "exceed[ed] the authority of Congress to regulate" interstate commerce because (1) the Act regulated the possession of a gun in a school zone, which the Court reasoned was not a "commercial activity," 514 U.S. at 551; and (2) the Act had no "express jurisdictional element which

3

might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce," *id.* at 562. Similarly, in *Morrison*, the Supreme Court held that the Violence Against Women Act (VAWA) was beyond Congress's Commerce Clause power because (1) the Act created a private cause of action for "[g]ender-motivated crimes of violence," which the Court reasoned, "are not, in any sense of the phrase, economic activity;" and (2) the Act had no "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." 529 U.S. at 613. And, in *Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519 (2012), the Court held that the Affordable Care Act's mandate for individuals to buy health insurance was beyond Congress's power to regulate interstate commerce because (1) it "does not regulate existing commercial activity," *id.* at 552; and (2) it is not "sufficient to trigger Congress's authority that almost all those who are uninsured will, at some unknown point in the future, engage in a health care transaction" that would concededly be commercial, *id.* at 557. In each of those cases, the Court concluded that the regulated activity was not commercial and that the statute did not have a jurisdictional element, necessarily holding that the statute as enacted was beyond Congress's constitutional power in *all* its applications.

The enumerated-powers claim the plaintiffs successfully argued before the District Court works the exact same way. The CTA attaches to

4

persons—an entity and the real people behind it—upon "filing a document with the secretary of state or similar office under the laws of a State or Indian Tribe." 31 U.S.C. § 5336(a)(2)(B). As the District Court put it, the statute thus regulates "millions of entities and their stakeholders the moment they obtain a formal corporate status from a State." Doc. 51 at 3. The triggering event is a ministerial act, which—like the activities at issue in *Lopez*, *Morrison*, and *NFIB*—the District Court reasoned is neither an "economic" nor a "commercial" act. *See* Doc. 51 at 34-35. Like the statutes in *Lopez* and *Morrison*, the CTA also contains no express jurisdictional element requiring that reporting companies, beneficial owners, or applicants are engaging in interstate commerce. *See id.* at 45-46. Furthermore, under *NFIB*, the CTA cannot impose a reporting requirement on any person on the premise that such person presumably engages in or will predictably engage in interstate commerce. Consequently, the District Court correctly held that the CTA—in all its applications—is beyond Congress's Commerce Clause powers, as was the case in *Lopez*, *Morrison*, and *NFIB*.

*Wickard v. Filburn*, 317 U.S. 111 (1942), and *Gonzales v. Raich*, 545 U.S. 1 (2005), were *as-applied* challenges that confirm the District Court's conclusion that a facial challenge to a federal statute that exceeds Congressional authority means that it has no constitutional applications. The plaintiffs in *Wickard* and *Raich* conceded that the relevant statutes – the Agricultural Adjustment Act and the Controlled Substances Act—

5

regulated interstate, commercial activities. They urged the courts to deem the statutes unconstitutional only as applied to the particular activities in which those plaintiffs were engaged, and not to the larger set of activities the statutes reached. The Supreme Court decisively rejected this theory of as-applied unconstitutionality: "[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class.'" *Raich*, 545 U.S. at 23 (citation omitted).

In other words, *Raich* and *Wickard* suggest that a Commerce Clause challenge is unlikely to succeed unless the plaintiff avers that the entire statute is outside Congress's power. Thus, contrary to the Supreme Court's observation in *NetChoice* that a facial challenge is "hard to win," 144 S. Ct. at 2397, a facial challenge in the Commerce Clause context is *more* likely to succeed than an as-applied challenge conceding the general validity of a statute. *Cf. Sabri,* 541 U.S. at 610 (Kennedy, J., concurring) (clarifying that the Court's skepticism about facial challenges "does not specifically question the practice we have followed in cases such as" *Lopez* and *Morrison* challenging Congress's powers under the Constitution).

**2.     *NetChoice* does not apply to this case.**

While the plaintiff in *NetChoice* "chose to litigate [its] cases as facial challenges," 144 S. Ct. at 2397, "the parties mainly argued these cases  .

6

. . as if, say, each case presented an as-applied challenge brought by Facebook protesting its loss of control over the content of its News Feed," *id.* at 2394. "In short, they treated these cases more like as-applied claims than like facial ones." *Id.* at 2398. The Supreme Court accordingly remanded to "address the full range of activities the laws cover, and measure the constitutional against the unconstitutional applications." *Id.* at 2397-98.

Unlike in *NetChoice*, this Court need not address a broader "range of activities" or "measure" all the CTA's applications to decide the plaintiffs' claim that the statute falls outside Congress's powers and violates the Fourth Amendment. *Id.* The CTA covers every person who forms or owns an entity created under State or Tribal law unless expressly exempted. It is a simple, single application across the board, and "no set of circumstances exists under which the [CTA] would be valid." *United States v. Salerno*, 481 U. S. 739, 745 (1987).

There are two additional reasons why the facial attack in *NetChoice* is distinguishable from this case. First, the CTA is a *federal* statute that encroaches upon centuries of State-law primacy over entity formation and governance, not State laws as in *NetChoice*. *See* Br. at 15-16. A primary reason why facial challenges are disfavored is because they "shift[] power from the States to the Federal Judiciary" by injecting federal courts into the interpretation of State laws before State courts have

7

construed them. *NetChoice,* 144 S. Ct. 2412, 2417 (Thomas, J., concurring in the judgment); *see also Yazoo & Miss. Valley R.R. v. Jackson Vinegar Co.,* 226 U.S. 217, 219 (1912) (foundational precedent turning back facial challenge to a Mississippi freight statute). Federalism concerns point decidedly in the opposite direction with respect to a facial attack on the CTA, Gun-Free School Zones Act, or VAWA: upholding a facial challenge under these circumstances does not undermine State sovereignty, it reinforces it. *See NFIB,* 567 U.S. at 548-49; *Morrison,* 529 U.S. at 615.

Second, "[f]acial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually barebones records." *Sabri,* 541 U.S. at 609 (quoting *United States v. Raines,* 362 U.S. 17, 22 (1960)). The procedural posture of the facial attacks in *NetChoice* was appellate review of district court grants of preliminary injunctions. By contrast, the plaintiffs here did not seek preliminary relief but sought to enjoin a statute that is currently in effect as to all reporting companies and their beneficial owners and applicants. Consequently, there is no concern about "premature" adjudication or need for factual development.

3. **Under the plaintiffs' Fourth Amendment theory, no application of the CTA is constitutional.**

The plaintiffs assert that the CTA violates the Fourth Amendment because it compels disclosures by *every* covered reporting company, beneficial owner, and applicant for criminal law-enforcement purposes without a warrant, reasonable suspicion, or recognized doctrinal exception.

8

281718266_1

*City of Los Angeles v. Patel* plainly establishes that courts can declare statutes facially unconstitutional under the Fourth Amendment in these circumstances. The Court explained that "[t]he Court's precedents demonstrate not only that facial challenges to statutes authorizing warrantless searches can be brought, but also that they can succeed." 576 U.S. at 418. So long as the searches the statute "actually authorizes" are contrary to the Fourth Amendment, the Court held, a court may declare the statute unconstitutional in all its applications. *Id.* at 418. Based on that reasoning, the Court held that the city ordinance in *Patel* was facially contrary to the Fourth Amendment. *See id.* at 428.

The same rationale makes the CTA facially contrary to the Fourth Amendment. The CTA requires disclosures of personal and private information without a warrant, probable cause, reasonable suspicion, or a recognized doctrinal exception, and it requires those disclosures expressly to facilitate criminal investigations and prosecutions of the companies and persons that make the disclosures. Every search "actually authorize[d]" by this statute is contrary to the Fourth Amendment, such that the CTA's facial invalidation on this ground is also necessary here.

In summary, the CTA, on its face, applies only to noncommercial activity and has no jurisdictional element limiting its application to activity that affects interstate commerce. That makes the CTA facially unconstitutional under *Lopez, Morrison*, and *NFIB*, and neither *NetChoice* nor any other precedent suggests that the District Court was required to

9

enquire whether there were additional applications of the CTA that might be constitutional. If an Article III court concludes that Congress has no constitutional power to enact a federal statute, then the law is invalid across the board. Likewise, the alternative theory on which the plaintiffs have asked this Court to affirm—that the CTA effects a blanket unreasonable search on persons who own or apply for covered entities under State or Tribal law contrary to the Fourth Amendment—necessarily means that there are no constitutional applications of the statute.

Respectfully submitted,

s/ Thomas H. Lee

*Counsel for Plaintiffs-Appellees*

| | |
|---|---|
| John C. Neiman, Jr. | Thomas H. Lee |
| MAYNARD NEXSEN P.C. | HUGHES HUBBARD & REED LLP |
| 1901 Sixth Ave. N., Suite 1700 | One Battery Park Plaza |
| Birmingham, Alabama 35203 | New York, New York 10004 |
| (205) 254-1000 | (212) 837-6000 |

# CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit and mailed four paper copies.

s/ Thomas H. Lee
*Counsel for Plaintiffs-Appellees*

281718266_1