No. 24-10736

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

NATIONAL SMALL BUSINESS UNITED, et al.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF THE TREASURY, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the Northern District of Alabama

---

## SUPPLEMENTAL BRIEF FOR APPELLANTS

---

*Of Counsel:*

ADDAR LEVI
  *Acting General Counsel*

JACOB LOSHIN
  *Assistant General Counsel for Enforcement and Intelligence*

SEAN BOYCE
  *Chief Counsel, Financial Crimes Enforcement Network*

*Department of the Treasury*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

PRIM F. ESCALONA
  *United States Attorney*

DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, undersigned counsel certifies that the certificate in the government's reply brief is complete and correct.

*s/ Steven H. Hazel*
Steven H. Hazel

C-1 of 1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

INTRODUCTION AND SUMMARY ................................................................. 1

ARGUMENT ........................................................................................................ 1

CONCLUSION ..................................................................................................... 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Moody v. NetChoice, LLC,*
   144 S. Ct. 2383 (2024) .................................................................. 1, 2, 4, 6, 7, 8, 9

*National Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) ................................................................................................ 5

*Sabri v. United States,*
   541 U.S. 600 (2004) ................................................................................................ 2

*United States v. Frandsen,*
   212 F.3d 1231 (11th Cir. 2000) ...................................................................... 1, 7, 8

*United States v. Lopez,*
   514 U.S. 549 (1995) ..................................................................................... 3-4, 4, 5

*United States v. Morrison,*
   529 U.S. 598 (2000) ................................................................................................ 4

*United States v. Paige,*
   604 F.3d 1268 (11th Cir. 2010) ...................................................................... 2, 3, 4, 5

*United States v. Pugh,*
   90 F.4th 1318 (11th Cir. 2024) ........................................................................ 2, 3, 6

*United States v. Rahimi,*
   144 S. Ct. 1889 (2024) .................................................................................... 2, 6, 8

*Washington State Grange v. Washington State Republican Party,*
   552 U.S. 442 (2008) ................................................................................................ 2

**Statutes:**

Corporate Transparency Act,
   Pub. L. No. 116-283, 134 Stat. 3888 (2021) .......................................................... 1
      § 6402(3), 134 Stat. at 4604 ................................................................................ 3
      § 6402(5), 134 Stat. at 4604 ............................................................................. 3, 4
         31 U.S.C. § 5336(a)(11) ................................................................................. 3, 5
         31 U.S.C. § 5336(b)(1)(B) ................................................................................. 5
         31 U.S.C. § 5336(b)(1)(D) ................................................................................. 5

## INTRODUCTION AND SUMMARY

The government respectfully submits this supplemental brief in response to the Court's August 14, 2024, order directing the parties to address whether the district court erred in not holding plaintiffs to their burden of showing that there are no constitutional applications of the Corporate Transparency Act (CTA), Pub. L. No. 116-283, 134 Stat. 3888 (2021). In this case, plaintiffs seek to facially invalidate a federal statute that Congress deemed essential to combating financial crime and protecting national security. Under the standards governing facial challenges, plaintiffs "cannot succeed" unless they "establish that no set of circumstances exists under which the [law] would be valid." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Even if plaintiffs had identified one or more entities regulated by the CTA but beyond the reach of Congress's enumerated powers, *but see* Gov't Opening Br. 17-24, they plainly have not identified a sufficient number of such entities to cast doubt on the statute's facial validity. The district court's judgment should be reversed.

## ARGUMENT

**A.** As the Supreme Court recently reaffirmed, to support a facial challenge, a plaintiff must clear a "very high bar." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). In this circuit, the "general rule" is that for "[a] facial challenge to be successful," the plaintiff "must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000) (quotation marks omitted). "That means that to prevail," the government

"need only demonstrate that [the challenged law] is constitutional in some of its applications." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024).

The Supreme Court has "made facial challenges hard to win" for "a host of good reasons." *NetChoice*, 144 S. Ct. at 2397. "[F]acial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quotation marks omitted). In addition, such challenges "run contrary to the fundamental principle of judicial restraint" that "courts should neither anticipate a question of constitutional law in advance" nor "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (quotation marks omitted). And "[a]lthough passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." *Sabri v. United States*, 541 U.S. 600, 608-09 (2004).

This Court enforces the onerous standards governing facial challenges in enumerated-powers cases. *See, e.g.*, *United States v. Pugh*, 90 F.4th 1318, 1325-26 (11th Cir. 2024); *United States v. Paige*, 604 F.3d 1268, 1273 (11th Cir. 2010) (per curiam). As in other types of cases, the fact that a statute's application might exceed Congress's enumerated powers "under some conceivable set of circumstances is insufficient to render it wholly invalid." *Pugh*, 90 F.4th at 1325 (quotation marks omitted). Instead, the governing test remains whether any "circumstances exist[] under which the statute

2

is valid." *Id.* For example, this Court has recognized that where a law can be "constitutionally applied to [the challenger's] conduct," any "facial challenge to [that law] must also fail." *Paige*, 604 F.3d at 1274.[1]

**B.** Under these standards, the CTA readily withstands plaintiffs' facial challenge. The individual plaintiff operates businesses that "manage and lease real property," Dkt. No. 39-3, at 1-2, and the associational plaintiff represents businesses "from every sector of the U.S. economy," Dkt. No. 39-2, at 2. Congress properly concluded that these and other entities engaged in commerce should report their ownership. In adopting reporting requirements, Congress aimed to prevent companies from engaging in financial transactions anonymously, a tactic that criminals frequently use to evade detection. *See* CTA § 6402(3), (5), 134 Stat. at 4604. To that end, Congress crafted the CTA to regulate "reporting compan[ies]": entities with legal authority to perform economic transactions in their own names, and thus with the capacity to facilitate financial crime. 31 U.S.C. § 5336(a)(11). Those "economic enterprise[s]"—including the businesses owned and represented by plaintiffs—fall squarely within the scope of Congress's commerce power. *United States v. Lopez*, 514

---

[1] Because the district court ruled on enumerated powers grounds and did not address plaintiffs' alternative Fourth Amendment claim, the government understands the Court's supplemental briefing order as directing the parties to discuss the enumerated powers issue alone. For the reasons given in the government's prior briefing (*see* Reply Br. 17-23), plaintiffs' Fourth Amendment claim is meritless.

U.S. 549, 561 (1995). That alone suffices to defeat plaintiffs' facial challenge. *See Paige*, 604 F.3d at 1274.

Similarly, with respect to the Necessary and Proper Clause, entities like plaintiffs that engage in commercial transactions underscore why Congress determined that corporate ownership reporting requirements are "needed" to enforce indisputably valid prohibitions on money laundering and other harmful commercial activities. CTA § 6402(5), 134 Stat. at 4604; *see* Gov't Opening Br. 17-21; *see also id.* at 24-26 (noting that Congress also appropriately identified the reporting requirements as essential to effectuating various other powers, including Congress's taxing and foreign affairs powers and the Executive's law enforcement and national security powers).

Plaintiffs therefore come nowhere near clearing the "very high bar" governing facial challenges. *NetChoice*, 144 S. Ct. at 2397. In the cases on which plaintiffs principally rely, *see Lopez*, 514 U.S. 549; *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court took pains to avoid casting doubt on Congress's authority to regulate entities or activities with an "apparent commercial character," *Morrison*, 529 U.S. at 611 & n.4. Unlike here, the activities before the Court had no evident connection to interstate or foreign commerce. The prohibitions on "noneconomic, violent criminal conduct" at issue in *Lopez* and *Morrison* "ha[d] nothing to do with 'commerce' or any sort of economic enterprise" and thus lacked a sufficient commercial connection. *Morrison*, 529 U.S. at 610, 617; *Lopez*, 514 U.S. at 561. In

4

*Lopez*, for example, the Court emphasized that the defendant "was a local student at a local school" and that "there is no indication that he had recently moved in interstate commerce." 514 U.S. at 567. The CTA's reporting requirements, by contrast, regulate "reporting compan[ies]," 31 U.S.C. § 5336(a)(11), whose "defining feature" is their ability and propensity to engage in commerce, *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 556 (2012) (opinion of Roberts, C.J.).

That the CTA has many valid applications is illustrated by statutory provisions that plaintiffs ignore. For example, the reporting requirements are not limited to companies formed recently but instead apply to a large number of businesses operating for years before the requirements came into effect. *See* 31 U.S.C. § 5336(b)(1)(B). Likewise, covered entities not only must identify their owners when they first become subject to the CTA, but also must update their reports to reflect changes in ownership on an ongoing basis for at least as long as they remain in operation. *See id.* § 5336(b)(1)(D). Because the CTA can plainly be "constitutionally applied" to companies engaged in commercial activity at the time they file reports, "any facial challenge" to the statute "must also fail." *Paige*, 604 F.3d at 1274.

This point is underscored by plaintiffs' inability to identify any reporting company beyond the scope of Congress's commerce power. Although plaintiffs have every incentive to highlight reporting companies that lack the requisite connection to commerce, they have not done so. Plaintiffs cannot plausibly claim that the CTA has no constitutional application—or even that it "lacks a 'plainly legitimate sweep,'"

5

*NetChoice*, 144 S. Ct. at 2397—when they fail to point to any entity covered by the statute but not the commerce power.

Even if plaintiffs were correct (Pls.' Br. 19-21) that the CTA could not constitutionally be applied to a hypothetical business that incorporates but conducts no economic activity before having to comply with the reporting requirements, their facial challenge would still fail. "[T]he fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Pugh*, 90 F.4th at 1325 (quotation marks omitted) (second alteration in original). Instead, to survive a facial challenge, a statute "need only" be "constitutional in some of its applications." *Rahimi*, 144 S. Ct. at 1898. As discussed, Congress designed the CTA to reduce anonymous commercial transactions, and it accomplished that objective by regulating many businesses—including those businesses owned and represented by plaintiffs—which engage in commercial activity and are thus indisputably within the commerce power.

The proper forum for plaintiffs' claim that the reporting requirements cannot be constitutionally applied to certain unidentified companies is not this facial challenge, but an as-applied challenge brought by those companies themselves. As we have previously explained, such a hypothetical challenge would fail on the merits, *see* Gov't Opening Br. 29-32, but its theoretical viability would not in any event justify the district court's judgment regarding plaintiffs' facial challenge in this case.

6

**C.** The district court's contrary conclusion is incompatible with the standards governing facial challenges. Plaintiffs "chose to litigate th[is] case[] as [a] facial challenge[], and that decision comes at a cost." *NetChoice*, 144 S. Ct. at 2397. To prevail, plaintiffs would need to "establish[] that no set of circumstances exists under which the [CTA] would be valid." *Id.* (quotation marks omitted). Yet the district court did not address that standard or analyze whether plaintiffs have satisfied it. Those errors require reversal.

The district court recognized that Congress could permissibly "impos[e] the CTA's disclosure requirements" if it specified that reporting companies must "engage[] in commerce." Dkt. No. 51, at 32. But in the mine run of cases—including all of the actual examples of the statute's application that were before the court—the relevant entities will be engaged in commerce, as the statute is designed to cover entities engaged in commercial transactions. That should have been sufficient to defeat a facial challenge. As noted, to the extent that any entities are covered by the CTA but not by the district court's hypothetical statute, that could at most support an as-applied challenge by those entities, not the facial challenge brought by the plaintiffs here.

The district court did not determine that it is common for reporting companies to refrain from economic activity—much less that all of them do, as would be required to support a facial challenge. *See Frandsen*, 212 F.3d at 1235. Indeed, the court notably did not suggest that plaintiffs themselves lie beyond the reach of the

7

commerce power. Plaintiffs thus fall well short of "establish[ing] that no set of circumstances exists under which the [law] would be valid." *Id.* at 1235.

In these respects, the district court's approach parallels a Fifth Circuit decision that the Supreme Court reversed earlier this year. In *Rahimi*, the court of appeals held a federal criminal prohibition facially invalid on Second Amendment grounds, but the Supreme Court reversed. *See* 144 S. Ct. at 1898. The Court explained that "[w]hen legislation and the Constitution brush up against each other, [a court's] task is to seek harmony, not to manufacture conflict." *Id.* at 1903 (quotation marks omitted). The Fifth Circuit thus erred in "focus[ing] on hypothetical scenarios where [the federal law] might raise constitutional concerns" rather than on "the circumstances in which [the law] was most likely to be constitutional." *Id.* Here, likewise, the district court mistakenly fixated on the CTA's application to a narrow set of hypothetical entities, while ignoring that the vast majority of reporting companies undoubtedly fall within the commerce power.

This case exemplifies the dangers that the "very high bar" for facial challenges is designed to prevent. *NetChoice*, 144 S. Ct. at 2397. As noted, Congress and the Executive have determined that the CTA is needed to serve government interests of the highest order, including combatting serious crimes and protecting national security. The district court agreed that the reporting requirements are "sensible," "praiseworthy," and "smart," yet relied on the CTA's application to a small group of hypothetical businesses to invalidate the statute in all other circumstances. Dkt. No.

8

51, at 1. That approach both disregards Supreme Court precedent and "threaten[s] to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *NetChoice*, 144 S. Ct. at 2397 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons and those given in our prior filings, the district court's judgment should be reversed.

Respectfully submitted,

*Of Counsel:*

ADDAR LEVI
   *Acting General Counsel*

JACOB LOSHIN
   *Assistant General Counsel for Enforcement and Intelligence*

SEAN BOYCE
   *Chief Counsel, Financial Crimes Enforcement Network*

*Department of the Treasury*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

PRIM F. ESCALONA
   *United States Attorney*

DANIEL TENNY

 s/ *Steven H. Hazel*
STEVEN H. HAZEL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7217*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2498*
   *Steven.H.Hazel@usdoj.gov*

September 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limit established by this Court's August 14, 2024, order because it does not exceed ten double-spaced pages, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Steven H. Hazel*
Steven H. Hazel

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel